# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| VINCENT MCFADDEN, ) | |
| ) | |
| Petitioner, ) | **THIS IS A CAPITAL CASE** |
| ) | |
| v. ) | Case No. 4:20-CV-01046-SEP |
| ) | |
| HEATHER COFER, ) | |
| ) | |
| Respondent. ) | |

**Respondent's Supplemental Brief in Response to Petitioner's Supplemental Brief Regarding *Loper Bright Enterprises v. Raimondo***

## Table of Contents

Table of Contents ............................................................................................. 1

Table of Authorities ......................................................................................... 2

Argument........................................................................................................... 4

I.   This Court should decline the invitation to overrule numerous cases from the United States Supreme Court. ................................................................. 4

II.  AEDPA and § 2254(d) do not infringe on the judicial power of Article III courts. .................................................................................................................. 5

III. Section 2254(d) is Congress's recognition of the federalism interests inherent between separate sovereigns. ......................................................... 13

IV.  McFadden's arguments concerning the workability of AEDPA do not state a basis for this Court to find that § 2254(d) is unconstitutional............ 15

V.   Two intermediate courts of appeal have specifically denied McFadden's argument concerning *Loper Bright* and § 2254............................................... 17

Conclusion ....................................................................................................... 18

# Table of Authorities

## Cases

*Bank Markazi v. Peterson,*
  578 U.S. 212 (2016) .................................................................................. 10, 11
*Bates v. Sec., Fla. Dep't. of Corr.,*
  2025 WL 2305211 (11th Cir. Aug. 1, 2025) ................................................. 17
*Brown v. Davenport,*
  596 U.S. 118 (2022) ..................................................................................... 4, 11
*Burt v. Titlow,*
  571 U.S. 12 (2013) ............................................................................................ 14
*Case of Sewing Mach. Co.,*
  85 U.S. 553 (1873) ............................................................................................ 5
*Cobb v. Thaler,*
  682 F.3d 364 (5th Cir. 2012) ..................................................................... 11, 17
*Colvin v. Taylor,*
  324 F.3d 583 (8th Cir. 2003) ............................................................................ 9
*Crater v. Galaza,*
  491 F.3d 1119 (9th Cir. 2007) .......................................................................... 7
*Engle v. Isaac,*
  456 U.S. 107 (1982) ........................................................................................ 14
*Evans v. Thompson,*
  518 F.3d 1 (1st Cir. 2008) ......................................................................... 12, 17
*Ex parte Bollman,*
  4 Cranch 75, 2 L.Ed. 554 (1807) ...................................................................... 6
*Ex parte Dorr,*
  44 U.S. 103 (1845) .......................................................................................... 12
*Felker v. Turpin,*
  518 U.S. 651 (1996) ................................................................................. passim
*Harrington v. Richter,*
  562 U.S. 86 (2011) .......................................................................................... 14
*Kansas v. Garcia,*
  589 U.S. 191 (2020) ........................................................................................ 13
*Lonchar v. Thomas,*
  517 U.S. 314 (1996) .......................................................................................... 6
*Loper Bright Enterprises v. Raimondo,*
  603 U.S. 369 (2024) .......................................................................................... 4
*Miles v. Floyd,*
  2025 WL 902800 (6th Cir. March 25, 2025) ................................................. 17

*Miller v. French*,
    530 U.S. 327 (2000) ............................................................................................... 5, 11
*Miller-El v. Cockrell*,
    537 U.S. 322 (2003) ..................................................................................................... 16
*Palmore v. United States*,
    411 U.S. 389 (1973) ....................................................................................................... 5
*Rivers v. Roadway Exp., Inc.*,
    511 U.S. 298 (1994) ..................................................................................................... 11
*Robertson v. Seattle Audubon Soc'y*,
    503 U.S. 429 (1992) ..................................................................................................... 11
*Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*,
    490 U.S. 477 (1989) ....................................................................................................... 4
*Shinn v. Ramirez*,
    596 U.S. 366 (2022) ............................................................................................... 13, 14
*United States v. Klein*,
    80 U.S. 128 (1871) .................................................................................................... 9, 10
*Williams v. Taylor*,
    529 U.S. 362 (2000) ......................................................................................... 6, 7, 8, 10
*Wright v. West*,
    505 U.S. 277 (1992) ....................................................................................................... 8
*Zivotofsky ex rel. Zivotofsky v. Kerry*,
    576 U.S. 1 (2015) ......................................................................................................... 13

Constitutional Provisions

U.S. Const. Article III ............................................................................................... passim

Statutes

28 U.S.C. § 2241 ............................................................................................................ 10
28 U.S.C. § 2254(d) ................................................................................................. passim
28 U.S.C. § 2254(d)(1) ................................................................................................. 6, 7
28 U.S.C. § 2254(d)(2) ..................................................................................................... 6

Rules

U.S. Sup. Ct. R. 13.1 ...................................................................................................... 16

3

**Argument**

On October 3, 2025, Petitioner Vincent McFadden filed supplemental briefing regarding his belief that the decision of the Supreme Court of United States in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), renders 28 U.S.C. § 2254(d) of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") unconstitutional. Doc. 70. Respondent provides the following supplemental briefing in response:

**I.   This Court should decline the invitation to overrule numerous cases from the United States Supreme Court.**

The Supreme Court of the United States has indicated that AEDPA is constitutionally valid. *See Brown v. Davenport*, 596 U.S. 118, 127 (2022). In the face of the long line of decisions applying AEDPA and § 2254(d), McFadden asserts that *Loper Bright* signals that § 2254(d) is unconstitutional, and that this Court should declare it so. But any argument that *Loper Bright* silently overruled the long line of AEDPA decisions announced by the Supreme Court should be rejected because the Court has cautioned against this exact sort of speculative reasoning. *See Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of [the] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to [the] Court the prerogative of overruling its own decisions."). As will be

4

discussed throughout this supplemental briefing, the United States Supreme Court has repeatedly and routinely applied the provisions of AEDPA, and McFadden's suggestions that § 2254(d) is unconstitutional amount to little more than policy arguments about Congress's choices in enacting AEDPA. This Court should decline McFadden's invitation to exert its own prerogative to overrule the decisions of the Supreme Court of the United States.

## II. AEDPA and § 2254(d) do not infringe on the judicial power of Article III courts.

Article III, § 1, of the United States Constitution states, in pertinent part, "The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish." "The decision with respect to inferior federal courts, as well as the task of defining their jurisdiction, was left to the discretion of Congress." *Palmore v. United States*, 411 U.S. 389, 400–01 (1973); *accord Case of Sewing Mach. Co.*, 85 U.S. 553, 559–60 (1873) (stating that the Constitution "remits to Congress the duty to create (with one exception) the necessary Federal tribunals; to prescribe under what circumstances and in what mode their jurisdiction shall be exercised; and also to determine from time to time, in view of the condition of the country, under what restrictions it shall be exercised"). Thus, Article III gives the federal judiciary the power to decide cases, *Miller v. French*, 530 U.S. 327, 342 (2000), but Congress still has the

5

responsibility for determining the scope of habeas relief under the federal statute. *See Felker v. Turpin*, 518 U.S. 651, 664 (1996). Indeed, as the *Felker* Court stated, "[W]e have long recognized that 'the power to award the writ by any of the courts of the United States, must be given by written law,' *Ex parte Bollman*, 4 Cranch 75, 94, 2 L.Ed. 554 (1807), and we have likewise recognized that judgments about the proper scope of the writ are 'normally for Congress to make.'" *Felker*, 518 U.S. at 664 (quoting *Lonchar v. Thomas*, 517 U.S. 314, 323 (1996)).

As has been explained in greater detail in Respondent's original response to this Court's show cause order, one such restriction imposed by Congress was the enactment of § 2254(d). *See Williams v. Taylor*, 529 U.S. 362, 412 (2000). Under the statutory provisions of AEDPA, a federal court is prohibited from granting relief by writ to a state prisoner unless the adjudication of the claim: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[,]" § 2254(d)(1); or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2). The "contrary to" and the "unreasonable application" clauses contained in § 2254(d)(1) have distinct meanings. *See Williams*, 529 U.S. at 404−06.

6

While litigants and courts considering habeas petitions often refer to the application of AEDPA as giving deference to the state court's decision, this use of "deference" is often a shorthand for the actual prohibition contained in § 2254(d). And under that prohibition, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411. But these restrictions do not require federal courts to abdicate their Article III interpretative powers. *Crater v. Galaza*, 491 F.3d 1119, 1127 (9th Cir. 2007) (finding that AEDPA does not prevent courts from giving independent judgment and instead that it "simply sets additional standards for granting relief in cases where a petitioner has already received an adjudication of his federal claims by another court of competent jurisdiction."). Instead, AEDPA's restrictions leave open a federal court's power to determine what the law is, while prohibiting the grant of habeas relief except in specific circumstances, which are:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court

7

> decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams*, 529 U.S. at 412–13.

Put another way, when a habeas claim presented in federal court was also fairly presented in state court, § 2254(d) *first* requires the federal court to identify the applicable federal law, and *second* to consider whether the state court's adjudication, on the record before it, was contrary to, or an unreasonable application of, that federal law, as determined by the Supreme Court of the United States. *See id.* But, in undertaking that first identification step, the Article III court need not defer to any state court's understanding of federal law. *See id.* at 411 ("We have always held that federal courts, even on habeas, have an independent obligation to say what the law is.") (quoting *Wright v. West*, 505 U.S. 277, 305 (1992) (O'Connor, J., concurring)). In applying § 2254(d), the Article III court is tasked with determining what the federal law is. *See id.* at 412–13. And, in making that determination, the federal court is unconstrained by any state court legal finding involving the scope or nature of that federal law. *See id.* at 411. But, after determining what the federal law *is*, the federal court may only grant relief *if* the adjudication of

8

the state court meets one of the conditions listed in § 2254(d). *See Colvin v. Taylor*, 324 F.3d 583, 591 (8th Cir. 2003).

McFadden devotes pages and pages of briefing to journal articles and amicus briefs regarding unrelated Administrative Procedure Act cases in an attempt to escape this straightforward application of § 2254(d). In that way, McFadden asks this Court to read an Article III infringement into the text of § 2254(d) and, after creating that infringement, to find that § 2254(d) is unconstitutional due to the fabricated infringement. This Court should not read § 2254(d) in such a manner.

Further, McFadden's attempts to compare § 2254(d) to *United States v. Klein*, 80 U.S. 128 (1871), are particularly unavailing. *Klein* involved a suit to recover private property "which came into the possession of the agents of the Treasury Department as captured or abandoned property [during the Civil War], and the proceeds of which were paid by them according to law into the Treasury of the United States." 80 U.S. at 136. As proof that the deceased property owner had not assisted the insurrection, the property owner's estate showed that the property owner had received a pardon. *Id.* at 139–44, 146. After the Court of Claims ruled in the property owner's favor, Congress introduced "a proviso" that limited the admissibility of pardons and required the Court to dismiss cases that had previously rendered judgments on pardons for want of jurisdiction. *Id.* at 143. The Supreme Court held that the proviso's

9

limitation on the Court's jurisdiction was unconstitutional because it attempted to "prescribe a rule for the decision of a cause in a particular way[.]" *Id.* at 146. The Court also held that the proviso at issue in *Klein* was unconstitutional because it impaired "the effect of a p[ar]don," and the proviso thus infringed "the constitutional power of the Executive." *Id.* at 147. The Court rested these determinations on the constitutional separation of powers. *Id.* at 147–48.

But even if *Klein* could be read broadly to invalidate any statutory rule of decision requiring a court to decide a case in a certain way, § 2254(d) would not run afoul of *Klein*. Indeed, § 2254(d) adopts a standard of general applicability that governs a particular class of cases—habeas petitions filed by state offenders. It does not dictate that any federal court substitute a non-Article III actor's interpretation of federal law for its own, or that a federal court render any specific order or judgment in any specific case. *See Williams*, 529 U.S. at 412–13. Instead, it merely amended federal law to require lower federal courts to apply a general standard to the facts of the particular federal habeas petition before it. *See id.*; *see also Felker*, 518 U.S. at 662 (discussing § 2254 and the Court's power to entertain original habeas petitions under 28 U.S.C. § 2241, and finding that provisions of § 2254 inform the Court's consideration of § 2241 petitions). The statute, therefore, does not infringe Article III, *see Bank Markazi v. Peterson*, 578 U.S. 212, 229 (2016) ("Congress

10

may indeed direct courts to apply newly enacted, outcome-altering legislation in pending civil cases."); *see also Robertson v. Seattle Audubon Soc'y*, 503 U.S. 429, 441 (1992) (stating that *Klein*'s prohibition does not apply when Congress amends the applicable law), and it preserves for the courts, "[t]he essence of judicial decisionmaking—applying general rules to particular situations[.]" *Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 312 (1994).

And in *Bank Markazi*, the Court noted, "a statute does not impinge on judicial power when it directs courts to apply a new legal standard to undisputed facts." 578 U.S. at 230. That same principle applies here. Congress enacted AEDPA to impose new standards for granting habeas relief to a state prisoner. *See Felker*, 518 U.S. at 662; *see also Davenport*, 596 U.S. at 127–34 (discussing the history of the Court's equitable doctrines related to habeas review and the reforms made by Congress in enacting AEDPA). Rather than prescribing an impermissible rule of decision under *Klein*, § 2254(d) "simply imposes the consequences of the court's application of the new legal standard[s]." *French*, 530 U.S. at 349. Because § 2254(d) "entrust[s] to the District Court application of those standards to the facts," *Bank Markazi*, 578 U.S. at 231, it does not violate Article III. *See Cobb v. Thaler*, 682 F.3d 364, 374 (5th Cir. 2012) ("As each circuit to address the question has recognized, § 2254(d)(1) does not intrude on the independent adjudicative authority of the federal courts. Rather, it limits the grounds on which federal courts may grant

11

the habeas remedy to upset a state conviction."); *see also Evans v. Thompson*, 518 F.3d 1, 10 (1st Cir. 2008) (denying argument that the clearly-established-Federal-law provision of § 2254(d) violated Article III, and stating, "[t]here is a world of difference between telling a court how to decide a case given a certain set of facts and limiting the availability of relief after a judge independently determines the existence of a right and the reach of Supreme Court precedent").[1]

The limitations of § 2254(d) have repeatedly been applied by the Supreme Court and they are consistent with historical restrictions on federal habeas relief for state prisoners. Indeed, in the Judiciary Act of 1789, the first Congress vested in federal courts the jurisdiction to issue writs of habeas corpus, but specifically excluded courts from issuing the writ to "bring up" prisoners confined under state authority for any purpose other than for use as a witness. *Ex parte Dorr*, 44 U.S. 103, 105 (1845). In 1867, Congress "made the writ generally available in all cases where any person may be restrained of his or her liberty in violation of the constitution, or of any treaty or law of the United States." *Felker*, 518 U.S. at 663 (citation and quotations omitted). But,

---

[1] The substance of many of McFadden's arguments track the petitioner's arguments in *Evans*. *See* 518 F.3d at 5–12. The United States Court of Appeals for the First Circuit denied them. *See id.* McFadden's reliance on *Loper Bright* does not change the analysis, and this Court should similarly deny McFadden's arguments here.

"it was not until well into [the twentieth] century that [the] Court interpreted that provision to allow a final judgment of conviction in a state court to be collaterally attacked on habeas." *Id.* This lineage of restriction on the writ by Congress confirms that § 2254(d)(1)'s limitation on the writ readily comports with Article III. *See Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1, 23 (2015) (stating that, in separation-of-powers cases, the Court often puts significant weight on historical practice).

### III. Section 2254(d) is Congress's recognition of the federalism interests inherent between separate sovereigns.

While McFadden's brief argues that his interpretation of § 2254(d) creates a supremacy clause concern, he ignores the real issues of comity and federalism that are furthered by application of § 2254(d), as that statute is understood by the *Williams* Court. "From the beginning of our country, criminal law enforcement has been primarily a responsibility of the States, and that remains true today." *Kansas v. Garcia*, 589 U.S. 191, 212 (2020). "The power to convict and punish criminals lies at the heart of the States' 'residuary and inviolable sovereignty.'" *Shinn v. Ramirez*, 596 U.S. 366, 376 (2022) (quoting The Federalist No. 39, p. 245 (C. Rossiter ed. 1961) (J. Madison)). "Thus, [t]he States possess primary authority for defining and enforcing the criminal law, and for adjudicating constitutional challenges to state convictions[.]" *Id.* (citations and quotations omitted) (first bracket in original).

13

In this system that makes States the primary organ of criminal law, the Court observed that "[b]ecause federal habeas review overrides the States' core power to enforce criminal law, it 'intrudes on state sovereignty to a degree matched by few exercises of federal judicial authority.'" *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). The Court further opined that this intrusion "imposes special costs on our federal system." *Id.* (quoting *Engle v. Isaac*, 456 U.S. 107, 128 (1982)).

Congress can, and did, legislate to protect the interests of victims and the States in the continuing enforcement of lawful final judgments. *See* § 2254(d); *see also Shinn*, 596 U.S. at 376–77 (discussing the costs of federal habeas intervention); *Felker*, 518 U.S. at 664 (recognizing that decisions about the proper scope of the writ are generally left to Congress). Instead of recognizing the real federalism concerns addressed by AEDPA, McFadden apparently argues that any understanding of AEDPA limiting any federal court's authority to intervene in any state criminal case or to impose any remedy any court sees fit runs afoul of Article III. But that argument only makes clear that McFadden's understanding of Article III and § 2254(d) is wrong. *See Burt v. Titlow*, 571 U.S. 12, 19 (2013) ("AEDPA recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights.").

14

**IV.  McFadden's arguments concerning the workability of AEDPA do not state a basis for this Court to find that § 2254(d) is unconstitutional.**

McFadden closes his brief by arguing that AEDPA is "untenably unworkable" and leads to "countless" interpretations of the Constitution. This argument appears to be a loose collection of policy arguments, the upshot of which is that McFadden apparently believes that the provisions of AEDPA are badly calculated to serve both justice and the statute's apparent goal. While Respondent disagrees, none of these arguments provide a valid basis for this Court to render the statute unconstitutional on Article III grounds. McFadden's apparent argument that federal courts too slowly dispose of cases under AEDPA, *see* Doc. 70 at 48 (stating the one study has shown the average time spent on death row has doubled after the enactment of AEDPA), is particularly odd, as a primary source of delay in many capital cases are federal habeas petitioners themselves. Ostensibly, under McFadden's argument, a federal habeas petitioner could render AEDPA unconstitutional simply by requesting too many extensions or by intermittently requesting leave to amend his pleadings to add additional arguments or claims years after filing his initial petition.

Finally, McFadden argues that AEDPA has somehow transformed federal habeas review into "a results-driven, check-the-box process where the focus is more on rushing cases to a conclusion, i.e., execution, than on accuracy

15

or protecting petitioners' rights." *Id.* at 52. Setting aside the fact that McFadden appears to argue that this Court should find § 2254(d) unconstitutional because AEDPA makes federal habeas review both too slow, *id.* at 48, and too fast, *id.* at 52, this argument could not be less accurate. Federal habeas petitioners, including petitioners like McFadden, receive numerous layers of review throughout the criminal process, including both state court direct appeal and post-conviction proceedings, and multiple layers of federal appellate and certiorari review. *See, e.g.*, U.S. Sup. Ct. R. 13.1. As was explained in detail in Respondent's response to this Court's initial show cause order, McFadden, himself, received a new trial after the Missouri Supreme Court reversed his first conviction in the criminal case underlying this federal habeas action.

This Court has received hundreds of pages of briefing on McFadden's federal habeas claims. The provisions of AEDPA do not create a "check-the-box" process and instead reflect the well-worn principle of federalism that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). *Loper Bright* does not abrogate that directive, and § 2254(d) does not unconstitutionally interfere with this Court's Article III interpretive powers.

16

**V.  Two intermediate courts of appeal have specifically denied McFadden's argument concerning *Loper Bright* and § 2254.**

While circuit courts have repeatedly denied challenges to the constitutionality of § 2254 asserting Article III violations, *see e.g.*, *Cobb*, 682 F.3d at 374; *see also Evans*, 518 F.3d at 5–12, at least two circuit courts have recently denied McFadden's argument concerning *Loper Bright* and § 2254. *Bates v. Sec., Fla. Dep't. of Corr.*, 2025 WL 2305211, *1 (11th Cir. Aug. 1, 2025) (denying application for certificate of appealability and stating, "[w]e hold that the district court's decision here—specifically, its rejection of Bates's argument that *Loper Bright* has rendered AEDPA deference unconstitutional—is not debatable."); *Miles v. Floyd*, 2025 WL 902800, *3 (6th Cir. March 25, 2025) (unpublished decision stating, "[f]or these reasons, we decline to hold that *Loper Bright* impliedly overturned AEDPA deference.")

## Conclusion

This Court should not declare that § 2254(d) is unconstitutional. Instead, for the reasons stated in the response to this Court's show cause order, the Court should deny McFadden's petition.

Respectfully submitted,

**CATHERINE L. HANAWAY**
Attorney General

*/s/ Andrew J. Clarke*
ANDREW J. CLARKE
Assistant Attorney General
Missouri Bar #71264
P.O. Box 899
Jefferson City, MO 65102
(573) 751-1546
(573) 751-2096 (Fax)
andrew.clarke@ago.mo.gov

*/s/ Katherine Griesbach*
KATHERINE GRIESBACH
Assistant Attorney General
Missouri Bar #75883
P.O. Box 899
Jefferson City, MO 65102
(573) 751-6009
(573) 751-2096 (Fax)
katherine.griesbach@ago.mo.gov

Attorneys for Respondent

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was electronically filed by using the CM/ECF system on October 16, 2025. All counsel of record shall receive service by operation of the CM/ECF system.

*/s/ Andrew J. Clarke*
ANDREW J. CLARKE
Assistant Attorney General