# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI EASTERN DIVISION

| | |
|---|---|
| VINCENT MCFADDEN, ) <br> ) <br> *Petitioner*, ) <br> ) <br> v. ) <br> ) <br> HEATHER COFER, ) <br> ) <br> *Respondent*. ) | Cause No. 4:20-CV-01046-SEP <br><br> THIS IS A CAPITAL CASE |

### Petitioner's Reply Brief in Support of Supplemental Brief Regarding *Loper Bright Enterprises v. Raimondo*

LAURENCE E. KOMP, MO Bar 40446
FAITH J. TAN, IL Bar 6342729
Federal Public Defender's Office
Western District of Missouri
1000 Walnut, Ste 600
Kansas City, MO 64106
816-675-0923
laurence_komp@fd.org
faith_tan@fd.org

ANISHA N. JONES, AR Bar 2012-004
Federal Public Defender's Office
Eastern District of Arkansas
1401 W. Capitol Avenue Ste. 490
Little Rock, AR 72201
501-324-6114
Anisha_Jones@fd.org

*Counsel for Vincent McFadden*

# **TABLE OF CONTENTS**

**Argument**..................................................................................................................1

**I.   Neither this Court nor the Supreme Court has analyzed AEDPA's unconstitutionality under the *Loper Bright* framework, so *stare decisis* principles are no obstacle to the Court's full review.**......................................2

**II.   Congress cannot nudge Article III courts toward a particular case disposition, because Article III imposes a duty upon federal courts to use their independent judgment in determining what the law is.** ..............5

**III.   State law and federal law work in tandem, and state actions must comport with federal constitutional law.**...............................................10

**IV.   AEDPA's unworkability and ensuing confusion provide additional justification departing from AEDPA's unconstitutional limitations on the judicial authority.** ........................................................................................13

**V.   The decisions of the other circuits are not binding on this Court.**.....14

**Conclusion** ............................................................................................................15

i

# TABLE OF AUTHORITIES

**CASES**                                                                  **Page(s)**

*Andrew v. White*, 604 U.S. 86 (2025 ................................................................................. 1

*Bank Markazi v. Peterson*, 578 U.S. 212 (2016) ................................................................ 8, 9

*Bates v. Sec., Fla. Dep't. of Corr.*, 2025 WL 2305211 (11th Cir. Aug. 1, 2025) ........ 14

*Brown v. Allen*, 344 U.S. 443 (1953) ................................................................................ 7-8

*Brown v. Davenport*, 596 U.S. 118 (2022) ....................................................................... 3

*Burt v. Titlow*, 571 U.S. 12 (2013) ................................................................................... 12

*Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356 (2006) ....................................................... 3

*Cohens v. Virginia*, 19 U.S. 264 (1821) ....................................................................... 3, 10-11

*Crater v. Galaza*, 491 F.3d 1119 (9th Cir. 2007) ........................................................... 2

*Cromwell v. Benson*, 285 U.S. 22 (1932) ...................................................................... 7

*Evans v. Thompson*, 518 F.3d 1 (1st Cir. 2008) ........................................................... 10

*Gamble v. United States*, 587 U.S. 678 (2019) .............................................................. 7

*Jones v. Hendrix*, 599 U.S. 465 (2023) ........................................................................... 7

*Lindh v. Murphy*, 96 F.3d 856 (7th Cir. 1996) .............................................................. 4

*Lockyer v. Andrade*, 538 U.S. 63 (2003) ....................................................................... 1

*Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024) ..................... 1, 5, 11, 13

*Marbury v. Madison*, 5 U.S. 137 (1803) ....................................................................... 1, 6

*McFadden v. Stange*, Case No. 4:18-CV-01559-AGF ................................................... 3

*Miles v. Floyd*, 2025 WL 902800 (6th Cir. March 25, 2025) .............................. 14-15

*Miller-El v. Cockrell*, 537 U.S. 322 (2005) ................................................................... 14

*Mills v. Rogers*, 457 U.S. 291 (1982) ............................................................................. 11

*Morgan v. Raburn*, 128 F.3d 694 (8th Cir. 1997) ....................................................... 11

*NCAA v. Alston*, 594 U.S. 69–93 (2021) ...................................................................... 3

*Payne v. Tennessee*, 50 U.S. 808 (1991) ......................................................................... 4

*Relentless Inc. v. Dep't of Commerce*, No. 22-1219 ...................................................... 5

*Robertson v. Seattle Audubon Soc.*, 503 U.S. 429 (1992) ............................................. 9

*Sanzone v. Mercy Health*, 954 F.3d 1031 (8th Cir. 2020) ........................................... 3

*United States v. Klein*, 80 U.S. 128 (1871) ................................................................. 8

*Webster v. Fall*, 266 U.S. 507, 511 (1925) .................................................................. 3

**STATUTES**

28 U.S.C. § 2241(c)(3) ................................................................................................ 11

28 U.S.C. § 2254(d) ............................................................................................. 1, 5, 15

**OTHER**

3 Blackstone, Commentaries ........................................................................................ 6

## ARGUMENT

To reiterate: *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), has redefined the landscape and reestablished the contours of the Article III power. As to judicial matters concerning federal constitutional law, federal courts possess the sole adjudicative authority. Under *Loper Bright*, the Supreme Court determined that executive agencies, as non-Article III entities, cannot share in the Article III power. Accordingly, state courts also cannot assume Article III power by rendering Article III courts bystanders as the state courts decide for themselves the supreme law of the land. Instead, Article III courts are duty-bound to use their independent judicial judgment in determining *all* parts of a case, including in habeas corpus cases.[1]

But AEDPA deprives them of that independent judgment. Using "independent judgment" in determining whether a state court's decision was reasonable differs from using independent judgment in determining what the law is, how the law applies to the facts of the petitioner's case, reaching a decision as to the petitioner's custody and rights, and enforcing its decision—it differs from using independent judgment to "say what the law is." *Marbury v. Madison*, 5 U.S. 137, 177 (1803).

A truly neutral federal judiciary, equipped with full independent judgment over all aspects of cases involving the federal Constitution, follows the Framers'

---

[1] In *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003), the Supreme Court noted that a decision focusing only on whether 28 U.S.C. § 2254(d)(1) forecloses habeas relief as a threshold matter does not reach the merits question of whether the state court erred. And then just earlier this year, the Supreme Court in *Andrew v. White*, 604 U.S. 86, 95 (2025), determined that a federal court's *independent obligation* of identifying applicable clearly established law is a threshold matter. Thus, the ultimate question of whether the state court erred at all, not just unreasonably, pivots on the independent exercise of Article III judgment that *Loper Bright* requires.

1

vision of the federal courts, which the Framers believed to be less prone to political bias than state courts. The Federalist No. 78, at 454 (Alexander Hamilton) (ABA Publishing ed., 2009). It is consistent also with the history of the writ of habeas corpus. A core role of the federal courts and the core purpose of the writ of habeas corpus is for a federal court to have the unfettered authority to decide cases and enforce the Constitution by granting the writ. AEDPA has failed to serve those interests, both in the sense of constitutionality and in terms of real-world practicality. This Court must be able to remedy unconstitutional custody, but AEDPA stands in the way. As the *Loper Bright* Court struck down *Chevron* for its unconstitutionality and unworkability, this Court should now also strike down AEDPA.

The State largely fails to address this or how the *Loper Bright* framework applies to AEDPA. The only case the State cites that appears to be even remotely in direct response to *Loper Bright* is *Crater v. Galaza*, 491 F.3d 1119 (9th Cir. 2007), for the proposition that AEDPA sets standards for granting relief. *Crater* was not only a case from the Ninth Circuit specifically, but also from eighteen years ago.

Nevertheless, Mr. McFadden responds to several of the State's points and clarifies his original points as detailed in his opening supplemental brief.

I. **Neither this Court nor the Supreme Court has analyzed AEDPA's unconstitutionality under the *Loper Bright* framework, so *stare decisis* principles are no obstacle to the Court's full review.**

Mr. McFadden does not claim that *Loper Bright* itself overruled § 2254 (AEDPA); rather, *Loper Bright* calls into question AEDPA's validity and invites the federal courts to examine AEDPA under *Loper Bright*'s new guidance.

2

The State's claim that the Supreme Court has "indicated" AEDPA is constitutionally valid lacks context. In *Brown v. Davenport*, the Supreme Court's passing comment[2] on AEDPA was insulated without any explanation or analysis as to *why* it believed AEDPA to be constitutionally valid. 596 U.S. 118, 127 (2022). The fact remains that while the Supreme Court has applied AEDPA, the Court has never fully examined the statute's constitutionality nor expressly found it to be constitutional. That the State said, and could only say, that the Supreme Court has "indicated" constitutionality, belies this fact.[3]

Under *Loper Bright*'s framework regarding the scope of Article III power, Article III courts have a newly ripened opportunity to determine AEDPA's constitutionality. Moreover, *Brown v. Davenport* predated *Loper Bright*, and its two-sentence conclusory statement about AEDPA's constitutionality does not foreclose a thorough analysis of whether AEDPA runs afoul of Article III courts' duty to use their independent judgment in saying what the law is pursuant to **current** Supreme Court precedent. The State does not dispute that *Chevron* deference and AEDPA deference

---

[2] An unvetted statement on an issue not before the Court, let alone a brief turn of phrase, does not set precedent. It does not bind courts in any "subsequent suit when the very point is presented for decision," *Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 363 (2006) (quoting *Cohens v. Virginia*, 19 U.S. 264 (1821)). It is a type of "stray comment[]" that should not be treated as answering a future question. *NCAA v. Alston*, 594 U.S. 69, 91–93 (2021); *see also Sanzone v. Mercy Health*, 954 F.3d 1031, 1039 (8th Cir. 2020) ("Questions . . . neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents") (quoting *Webster v. Fall*, 266 U.S. 507, 511 (1925)).

[3] In Mr. McFadden's other habeas case, Judge Fleissig recognized that "neither the Supreme Court, nor the Eighth Circuit, nor any other United States Circuit Court has addressed the precise issue Petitioner intends to raise." Doc. 98 (Memorandum and Order), *McFadden v. Stange*, Case No. 4:18-CV-01559-AGF.

3

are intertwined and thus rise and fall together. *See Lindh v. Murphy*, 96 F.3d 856, 871 (7th Cir. 1996) (en banc). *Chevron* and AEDPA rose together as once-established law, and now that *Chevron* has fallen, AEDPA must fall too.

This argument that the Court should not overrule "numerous" Supreme Court cases has been addressed in the opening brief and in the *Loper Bright* majority opinion. Doc. 70 at 38-42; 603 U.S. at 407-12. Chief Justice Roberts explained, "*Stare decisis* is not an 'inexorable command.'" *Loper Bright*, 603 U.S. at 407 (quoting *Payne v. Tennessee*, 50 U.S. 808, 828 (1991)). If a precedent lacks reasoning and workability and does not foster reliance interests, *stare decisis* is inapplicable. *Id.* For these reasons, the Supreme Court overturned *Chevron*, a once well-established, oft-used doctrine, noting, "*Chevron* has proved to be fundamentally misguided. . . . Experience has shown that *Chevron* is unworkable. . . . *Chevron* accordingly has undermined the very 'rule of law' values that *stare decisis* exists to secure." *Id.* at 407, 411.

Likewise, here, the Court's hand is not forced by *stare decisis*. For the reasons discussed in Mr. McFadden's opening supplemental brief, there are significant issues with AEDPA's reasoning, workability, and reliability. The Supreme Court found vacating *Chevron* to not violate *stare decisis* because of deficiencies that are virtually identical to those present with AEDPA. Just as the Supreme Court determined there was little reason to continue using *Chevron* deference, there is little reason to continue using the constitutionally infirm and impractical AEDPA.

This Court is not bound by *stare decisis* now. Should the Court find AEDPA constitutionally deficient, prior cases applying AEDPA—but not analyzing or

4

upholding AEDPA—are not an obstacle to holding as such. This Court should find AEDPA unconstitutional based on the principles set forth in *Loper Bright*.

**II.     Congress cannot nudge Article III courts toward a particular case disposition, because Article III imposes a duty upon federal courts to use their independent judgment in determining what the law is.**

Congress has granted habeas jurisdiction to Article III courts and allows those courts to grant the writ to state-sentenced individuals. That is the permissible scope of the habeas authority under the Article III principles espoused in *Loper Bright*.[4] Congress can never delegate that Article III authority to another.

Several of the State's points miss the mark given *Loper Bright*'s teachings. First, the State insists that under AEDPA, federal courts are free to determine what the law is but are prohibited from granting habeas relief except in "specific circumstances." Mr. McFadden respectfully refers the Court to Section II.A.2. of his supplemental brief. Doc. 70 at 26-29. In short, AEDPA does not just limit the habeas

---

[4] The State says that "deference" is often the "shorthand for the actual prohibition contained in § 2254(d)." But, "deference" is widely accepted, referring to the practice of Article III courts adopting a non-Article III entity's decision and/or reasoning. *See, e.g., Loper Bright*, 603 U.S. at 396 ("The deference that *Chevron* requires of courts reviewing agency action cannot be squared with the APA."); Transcript of Oral Argument at 80, *Relentless Inc. v. Dep't of Commerce*, No. 22-1219 (Sotomayor, J.) ("AEDPA is the quintessential question where we not only give deference to state court decisions . . ."); Transcript of Oral Argument at 82, *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024) (of *Chevron* step two, Solicitor General Prelogar said, "it's obviously deferential."). The State previously embraced the halcyon importance of deference. In its response to the show cause (Doc. 25), the State used the terms "defer," "deference," and "deferential" countless times in regard to AEDPA. For example, the State said, "Because the Missouri Supreme Court reasonably relied on direct authority from the United States Supreme Court, this Court must defer to the state-court decision." *Id.* at 73 (citations omitted).

5

remedy—it jettisons it altogether where the so-called "specific circumstances" are not met (i.e. in an alarming majority of habeas cases). And an Article II action that imposes a blanket denial of a remedy is necessarily an impediment to Article III courts' power to determine what the law is. *See Marbury*, 5 U.S. at 163 (where there is a legal right, there is a legal remedy (citing 3 Blackstone, Commentaries at 23)).

The State also insists that the Article III duty to independently judge and determine what the federal law says is satisfied in step one of the AEDPA analysis when the Article III court simply identifies the applicable federal law. This does not bear up under scrutiny—an announcement is not an application. Indeed, AEDPA limits a federal court to only enforcing the constitution when a state court is unreasonably wrong. Forcing Article III courts to approve of incorrect constitutional rulings necessarily delimits their ability to determine the scope of the federal law.

The argument that Article III courts satisfy the duty to use independent judgment when they identify the applicable federal law produces an absurdly literal reading of the phrase "determining what the federal law is," which produces an equally absurd perspective of the Article III duty as limited by AEDPA. Under Article III, courts determine which federal law is to be applied. But their duty to use independent judgment is not limited just to when they literally "say" what the law is—the courts' independent judgment applies to the entirety of the case. The State's *Wright v. West* quotation, that "[w]e have always held that federal courts, even on habeas, have an independent obligation to say what the law is" goes to this point, although the State seems to miss the full context of the quote—Justice O'Connor said

6

in the sentence immediately preceding the quote, "But this does not mean that we have held in the past that federal courts must presume the correctness of a state court's legal conclusions on habeas, or that a state court's incorrect legal determination has ever been allowed to stand because it was reasonable." 505 U.S. 277, 305 (1992) (O'Connor, J., concurring).

It is insufficient for an Article III court to merely declare what the applicable federal law would be—the court must ensure that law is accurately applied to the facts. The State urges a nonsensical approach that would result in an Article III court declaring the applicable federal law, formulating how it believes that law might be applied, identifying how the state court incorrectly applied the law, but stopping there and not providing a remedy because there exists *some* conceivable, not unreasonable reasoning the state court possibly used. But the judicial power tasks Article III courts with not only determining the law, but also with applying the law to the facts, and using independent judicial judgment to do so. *See, e.g., Cromwell v. Benson*, 285 U.S. 22, 60 (1932) (the "judicial power of the United States necessarily extends to the independent determination of all questions, both of fact and law, necessary to the performance of that supreme function."); *Gamble v. United States*, 587 U.S. 678, 717, 723 (2019) (Thomas, J., concurring). The court must then issue a binding judgment that adjudicates the rights of the parties and provides a remedy considering, in the court's full independent judgment, the totality of the case. *See, e.g., Jones v. Hendrix*, 599 U.S. 465, 487 (2023). One such appropriate remedy is the issuance of the writ of habeas corpus. *Brown v. Allen*, 344 U.S. 443, 554 (1953) (Black,

7

J., dissenting) ("Perhaps there is no more exalted judicial function" than an Article III judge granting habeas corpus relief "in order to prevent forfeiture of life or liberty in flagrant defiance of the Constitution."). *That* is saying what the law is.

The State also misses the mark in its discussion of *United States v. Klein*, 80 U.S. 128 (1871). The facts regarding pardons and such in *Klein*, which the State details, are beside the point. *Klein* stands for the proposition that Congress cannot prescribe a rule of decision to the judiciary in a pending case. *Id.* at 146-47 ("Can we do so without allowing one party to the controversy to decide it in its own favor? Can we do so without allowing that the legislature may prescribe rules of decision to the Judicial Department of the government in cases pending before it? We think not. . . ."). In terms of habeas review, Congress, through AEDPA, cannot grant jurisdiction over habeas petitions to Article III courts but then push them to rule in a certain fashion.

The State's effort to rely on *Bank Markazi v. Peterson*, 578 U.S. 212 (2016), does not undermine Mr. McFadden's arguments. *Bank Markazi* recognized *Klein* as the operative precedent. *Bank Markazi*, 578 U.S. at 244; *see also id.* at 245 n.2 (Roberts, C.J., dissenting) (*Klein* "focus[ed] on the threat to the separation of powers from allowing Congress to manipulate jurisdictional rules to dictate judicial results."). *Bank Markazi* dealt with a unique foreign policy question—satisfaction of judgments against a foreign sovereign that supported terrorism. *Id.* at 215-16. The statute there provided a means to satisfy judgments for harm done to victims of Iran-sponsored acts of terrorism, and only when certain additional criteria were met. A pathway to enforce a judgment after the Court found harm is not endorsing the

8

outcome of the harm, the subject of a valid judgment—it means to remedy a judgment if additional criteria are satisfied. The harmed party was not assured to win the case but was given the opportunity to satisfy a judgment if they did "win."

The *Bank Markazi* Court noted that "a statute does not impinge on judicial power when it directs courts to apply a new legal standard to undisputed facts." *Id.* at 231. Unlike AEDPA, where courts are told to affirm incorrect determinations of constitutional law if they are not unreasonably incorrect, *Bank Markazi* is not a direction on how to decide the case. Article III functions as a limitation on the power of Congress to tell the court how to decide a case, as the Supreme Court itself clarified long ago in *Klein*. Additionally, the State fails to mention the hypotheticals proposed in the majority and dissenting opinions involving situations in which Congress determines which party should prevail—which all the Justices agreed would violate *Klein*. *Id.* at 232; *id.* at 236-37 (Roberts, C.J., dissenting). Mr. McFadden respectfully suggests AEDPA is parallel to the proposed hypotheticals from *Bank Markazi*.

The State also improperly relies on *Robertson v. Seatle Audubon Soc.*, 503 U.S. 429 (1992). *Robertson* did not contest *Klein*'s application and declined to address it after having found that the statute at hand did not amend an earlier law nor tell courts how to rule. *Robertson*, at 441; *see id.* at 337 (Petitioners "argue that subsection (b)(6)(A) replaced the legal standards underlying the two original challenges with those set forth in subsections (b)(3) and (b)(5), without directing particular applications under either the old or the new standards. We agree."). *Robertson* simply has no application here—the Court never reached the *Klein* issue.

9

Moreover, the State argues that some of the arguments in Mr. McFadden's opening brief are similar to those in *Evans v. Thompson*, which the First Circuit denied. Doc. 75 at 12 n.1 (citing *Evans v. Thompson*, 518 F.3d 1, 5-12 (1st Cir. 2008)). This ignores, however, that the First Circuit considered *Evans* in 2008, sixteen years before *Loper Bright* came down or was likely even a conceivable possibility. The State insists, however, that *Loper Bright* does not change the First Circuit's analysis, and so this Court should similarly deny the challenge. This is a puzzling argument—why wouldn't a recent Supreme Court case that redefines the parameters of Article III judicial power influence a case where the very thing at issue is the parameters of Article III judicial power? *Loper Bright* changed the delineation of federal court judicial power, so while the *Evans* court may have considered arguments similar to Mr. McFadden's, the court did so without the guidance of *Loper Bright*, and certainly without the modern understanding of Article III power.

Congress has "passed the limit which separates the legislative from the judicial power." *Id.* at 147. Congress cannot automatically bind this Court to the state court's decision if this Court finds the semblance of reasonableness. But Congress has done so, and this Court should thus find AEDPA to run afoul of the Constitution.

### III.   State law and federal law work in tandem, and state actions must comport with federal constitutional law.

The State's argument misses the point. Certainly, the States have primary authority over matters that fall within the sphere of their respective state criminal laws. But federal habeas review transcends the state criminal law realm. *Cohens v.*

10

*Virginia*, 19 U.S. 264 (1821). By its nature, federal habeas review is about whether a conviction and/or sentence, even one imposed by a state court, violates the individual's rights as guaranteed by the federal Constitution. *See, e.g.,* 28 U.S.C. § 2241(c)(3) ("The writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States."). Federal constitutional rights are guaranteed to both individuals held in state or federal custody and provide the minimum required level of protection; state law must provide at least the same amount of protection. *See, e.g., Mills v. Rogers*, 457 U.S. 291, 300 (1982) ("Within our federal system the substantive rights provided by the Federal Constitution define only a minimum."); *Morgan v. Raburn*, 128 F.3d 694, 696 (8th Cir. 1997) ("The Federal Due Process Clause defines only the minimum protections required.").  State law is not supreme and must comport with federal law. A State cannot impose a conviction or sentence that violates the federal Constitution and label it a purely state law matter to avoid constitutional compliance.

In the interest of comity and federalism, federal courts can and should afford state court decisions respectful consideration. *Cf. Loper Bright*, 603 U.S. at 386 ("The Court also gave the most respectful consideration to Executive Branch interpretations simply because the officers concerned were usually able men, and masters of the subject . . . . 'Respect,' though, was just that. The views of the Executive Branch could inform the judgment of the Judiciary, but did not supersede it." (internal quotations and citations omitted)). Individuals in state custody are subject to state law in addition to federal law, and so state law as interpreted by the state

11

courts is relevant. But in federal habeas review where the focus is on federal law rather than state law, Article III courts, while permitted to consider the reasoning of the state courts below, must use their own independent judgment in deciding on the application of federal law to the present facts.

Mr. McFadden, although incarcerated, is not removed from the protections of the Constitution. Mr. McFadden's argument as to *Loper Bright* and AEDPA's waning vitality pertains to the protection the federal Constitution provides him against Missouri's unlawful custody. As to the State's claim that Mr. McFadden "apparently argues that any understanding of AEDPA limiting any federal court's authority to intervene in any state criminal case or to impose any remedy any court sees fit runs afoul of Article III"—Mr. McFadden argues that only those understandings of AEDPA that prevent the federal courts from fully exercising their Article III independent judicial judgment run afoul of Article III.[5] Stated another way, Mr. McFadden merely argues that an Article III federal court determines what the law is.

---

[5] The State cites *Burt v. Titlow*, 571 U.S. 12, 19 (2013), for the proposition that ". . . State courts are adequate forums for the vindication of federal rights." Doc. 75 at 14. State courts may be "adequate" at assessing federal rights, but so are Article III courts. In fact, Article III courts were *specifically* designed for the "vindication of federal rights." Moreover, if state courts are functionally the end point for vindicating federal rights, then what is the point of federal habeas review? Considering what is at stake in federal habeas—which here, is literal life—full, multi-layered review, not just "adequate" review, is critical. So, while state courts may be adequate, as a blanket statement, proper federal habeas review requires more.

12

**IV. AEDPA's unworkability and ensuing confusion provide additional justification departing from AEDPA's unconstitutional limitations on the judicial authority.**

Mr. McFadden does not argue that AEDPA is unconstitutional because it is unworkable. Rather, a discussion of the confusion AEDPA has caused in practice illustrates the landscape of modern federal habeas review. This discussion from Mr. McFadden's opening brief may not serve as the principal reason for finding AEDPA unconstitutional, but it provides additional reasoning. Consider that in *Loper Bright*, the majority included an entire section on *Chevron*'s unworkability to explain why the Court was not bound by *stare decisis*. 603 U.S. at 407-12. In other words, Mr. McFadden's explanation regarding the reality of AEDPA demonstrates that like *Chevron* in *Loper Bright*, AEDPA's purpose has not come to fruition, and there is little reason to continue adhering to such a convoluted and deficient status quo.

The State's discussion of delay is a non-starter. Several years are directly attributable to the State's misconduct in acting in a racially discriminatory manner. The State describes how Missouri petitioners receive numerous layers of review, and how the Missouri Supreme Court reversed Mr. McFadden's initial conviction and sentence. This is telling. The State's *Batson* violations are a clear example of the sorts of constitutional errors abound in habeas cases. The State's misconduct underscores the need for thorough review—after all, constitutional error against Mr. McFadden has been explicitly recognized once already.

The multiple layers of review petitioners are due demonstrates how critical it is that the process gets these cases ***correct***, not just in the ballpark of "reasonable

13

correctness." If the aim was simply to achieve a not unreasonable but potentially inaccurate case conclusion, such involved appellate processes would be unnecessary. That multiple courts at multiple levels are each responsible for examining multiple, but different, facets of habeas cases shows that the purpose of the habeas process is constitutional accuracy. Mr. McFadden poses that it should be questioned when the bad actor has a hand in authoring the ruling being considered by this Court, and which AEDPA encourages this Court to uphold. Mr. McFadden should continue receiving meaningful habeas review regarding whether his conviction and sentence are ***actually*** proper under the federal Constitution—this is what he is entitled to.

## V. The decisions of the other circuits are not binding on this Court.

As a general matter, this Court is not bound by the decisions of other circuits. The Court can independently find AEDPA deference unconstitutional.

The cases the State cites from the Sixth Circuit and Eleventh Circuit differ from the case at hand. Firstly, *Bates v. Sec., Fla. Dep't. of Corr.*, 2025 WL 2305211 (11th Cir. Aug. 1, 2025), was a denial of a certificate of appealability, which is not a ruling on the merits of the *Loper Bright* question. *See, e.g., Miller-El v. Cockrell*, 537 U.S. 322, 331 (2005). Second, the *Loper Bright* argument in *Miles v. Floyd*, 2025 WL 902800 (6th Cir. March 25, 2025), is not only "very brief," amounting to about seven pages and included in the Standard of Review section, but is also largely based on the arguments presented in a law review article. Doc. 21 at 3-10 (Petitioner Appellant's Corrected Brief), *Miles v. Floyd*, Case No. 24-1096 (6th Cir. Aug. 27, 2024). While Mr. McFadden cited that same law review article in his opening supplemental brief, his

14

arguments are not based on that article and do not track exactly the article's arguments. And neither petitioner presented arguments nearly as extensive or detailed as Mr. McFadden. Mr. McFadden has presented expansive arguments and evidence on *Loper Bright*'s unconstitutionality and this Court has more evidence to consider than the Eleventh Circuit in *Bates* and the Sixth Circuit in *Miles*.

## CONCLUSION

Mr. McFadden respectfully requests that this Court find § 2254(d)'s requirement that federal courts capitulate to incorrect but not unreasonable state court decisions infringes unconstitutionally on Article III judicial authority and duty to decide cases and determine the law using their independent judgment. Accordingly, Mr. McFadden requests that this Court analyze Claim 1 (Doc. 40 at 35-44), Claim 3 (*id.* at 54-67), Claim 5-1 (*id.* at 72-85), Claim 5-2 (*id.* at 86-95), Claim 5-5 (*id.* at 101-13), Claim 5-11 (*id.* at 125-34), Claim 5-12 (*id.* at 135-40), Claim 5-13 (*id.* at 141-45), Claim 5-14 (*id.* at 146), Claim 6 (*id.* at 153-58), Claim 7 (*id.* at 159-66), Claim 8 (*id.* at 167-78), Claim 9 (*id.* at 179-83), Claim 10 (*id.* at 191-94), Claim 11 (*id.* at 195-203), Claim 12 (*id.* at 204-10), Claim 13 (*id.* at 211015), Claim 14 (*id.* at 216-20), Claim 15 (*id.* at 223), Claim 16 (*id.* at 224-26), Claim 17 (*id.* at 227-34), Claim 18 (*id.* at 235-38), Claim 19 (*id.* at 239-41), Claim 20 (*id.* at 242-45), Claim 21 (*id.* at 246-47), Claim 22 (*id.* at 248-50), Claim 23 (*id.* at 251-54), Claim 24 (*id.* at 255-57), and Claim 25 (*id.* at 258-61) free of the unconstitutionally stringent constraints of § 2254(d).

Respectfully submitted,

*/s/ Laurence E. Komp*
Laurence E. Komp, MO Bar 40446
Faith J. Tan, IL Bar 6342729
Capital Habeas Unit
Federal Public Defender
Western District of Missouri
1000 Walnut Ste. 600
Kansas City, MO 64106
816-675-0923
laurence_komp@fd.org
faith_tan@fd.org

*/s/ Anisha N. Jones*
Anisha N. Jones, AR Bar 2012-004
Assistant Federal Public Defender
Federal Public Defender's Office
1401 W. Capitol Avenue Ste. 490
Little Rock, AR 72201
501-324-6114
Anisha_Jones@fd.org

*Attorneys for Petitioner*

## CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2025, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system. Through cooperation of the CM/ECF system, I hereby provide to all of counsel of record notice of this filing and the ability to view and download the foregoing pleading.

/s/ Laurence E. Komp
LAURENCE E. KOMP
Capital Habeas Unit, Chief